Filed 12/19/16

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 052596 |
| Plaintiff and Respondent, | ) ) | East Los Angeles Trial Court |
| v. | ) ) | No. 4CA14664 |
| ONESRA ENTERPRISES, INC. and ANNA TYUTINA, | ) ) ) ) | |
| Defendants and Appellants. | ) ) | **OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melissa Widdifield, Judge.  Affirmed.

Law Offices of Stanley H. Kimmel and Stanley H. Kimmel; Alison Minet Adams for Defendants and Appellants.

Michael N. Feuer, City Attorney, City of Los Angeles, Asha Greenberg, Assistant City Attorney, and John R. Prosser, Deputy City Attorney, for Plaintiff and Respondent.

* * *

1

INTRODUCTION

Following a court trial, defendants Anna Tyutina and Onesra Enterprises, Inc. were convicted of violating, on August 27 and 28, 2013, Los Angeles Municipal Code (LAMC) sections 45.19.6.2, subdivision A,[1] which prohibits operating or participating in a medical marijuana business (MMB),[2] and 12.21, subdivision A.1(a),[3] which prohibits using a building, land, or structure for an unpermitted use. Defendants raise a variety of contentions on appeal: (1) the trial court erred in denying their Penal Code section 1118 motion for judgment of acquittal; (2) they proved by a preponderance of the evidence that they qualified for a limited immunity under LAMC section 45.19.6.3; (3) the instant prosecution was barred by tax amnesty and state preemption of marijuana laws; (4) the action was improperly prosecuted as a "nuisance" violation; and (5) the court committed structural error in limiting closing argument. We affirm.

BACKGROUND FACTS

Prosecution witnesses Los Angeles Police Department Detective Ruben Moreno and his partner Officer Lucerito Rodriguez testified that on August 27 and 28, 2013, they were doing a "compliance check" and investigating Euphoric Caregivers, located at 10655 West Pico Boulevard. Rodriguez testified Euphoric was not on the "Prop. D list" of MMB's which were "probably" in compliance with Proposition D. On the above dates, the officers made contact with customers who were seen entering and existing the storefront. The customers admitted to

---

[1]LAMC section 45.19.6.2, subdivision A, provides, "It is unlawful to own, establish, operate, use, or permit the establishment or operation of a[n] [MMB], or to participate as an employee, contractor, agent or volunteer, or in any other manner or capacity in any [MMB]."

[2]An MMB is defined, inter alia, as "Any location where marijuana is cultivated, processed, distributed, delivered, or given away to a qualified patient, a person with an identification card, or a primary caregiver." (LAMC, § 45.19.6.1, subd. A.)

[3]LAMC section 12.21, subdivision A.1(a), entitled, "Permits and License," provides in relevant part, "No building or structure shall be . . . maintained, nor shall any building, structure, or land be used . . . for any use other than is permitted in the zone in which such building, structure, or land is located and then only after applying for and securing all permits and licenses required by all laws and ordinances."

purchasing marijuana from Euphoric; presented their medical marijuana card or a doctor's recommendation for marijuana; and showed the officers the marijuana they purchased at Euphoric. The officers formed the opinion that Euphoric was distributing marijuana to qualified patients. Rodriguez testified she did not determine whether Euphoric had a business tax registration certificate (BTRC) or "any licensed required by the City" as part of her investigation.

Valentino Powell testified that either on August 27 or August 28, 2013, he purchased marijuana with a physician's recommendation at Euphoric and that he was served by Gabriel Davis. When asked whether he knew Tyutina and whether she "typically" served him at Eurphoric, Powell answered, "No."[4]

At the close of the People's case-in-chief, on September 15, 2015, the defense made a motion for judgment of acquittal under Penal Code section 1118. Defense counsel argued that the People's evidence failed to prove that defendants operated an MMB without the proper licenses required under section 12.21 and there was no evidence that Tyutina operated Euphoric on the charged dates. The court denied the motion.

Defense witness Gabriel Davis testified he was hired by either Tyutina or her stepfather, Arsen Ordoukhanian, in 2007 to distribute marijuana at Euphoric.[5] Davis testified that either Tyutina or her stepfather was the CEO of Onesra, and that only Tyutina and her stepfather were signers on Onesra's checking account. Davis identified defense exhibit J as a check bearing Tyutina's signature. Davis also identified defense exhibit D as the "original 2007 registration for taxation for medical marijuana." Davis testified that Onesra had both an "L044 license and [a] L050 license" which were renewed by the payment of taxes each year. He also testified Onesra received a bill for its "Measure M" license which was paid, and that Onesra had tax amnesty. Davis identified numerous defense exhibits that were admitted in evidence.

DISCUSSION

---

[4]People's exhibits 1 through 9 were received into evidence.

[5]It is undisputed that Onesra was doing business as Euphoric Caregivers.

3

Proposition D, approved by the voters in 2013, added article 5.1 (LAMC, § 45.19.6 et seq.) to chapter IV of the LAMC to regulate MMB's. LAMC section 45.19.6.2, subdivision A, makes it "unlawful to own, establish, operate, use or permit the establishment or operation of a[n] [MMB] . . ." in the city. LAMC section 45.19.6.3, however, provides an exception or limited immunity for MMB's "that meet a litany of requirements . . . ." (*Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029, 1037 (*Safe Life*).)

*Penal Code Section 1118 Motion*

On appeal, defendants contend the trial court erred in denying their Penal Code section 1118 motion. "Section 1118 was designed to terminate a prosecution for an offense or offenses at the earliest possible time when the prosecution's own evidence is insufficient to support a conviction. [Citations.]" (*People v. Norris* (2002) 95 Cal.App.4th 475, 479.) "Section 1118 . . . establishes a procedure for summary acquittal when the prosecution presents insufficient evidence of a criminal charge during its case-in-chief. It provides in relevant part, 'In a case tried by the court without a jury . . . the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses.'" (*Id*. at p. 478.)

*LAMC section 12.21, subdivision A.1(a)*

LAMC section 12.21, subdivision A.1(a), provides that it is illegal to maintain or use a building or structure "for any use other than is permitted in the zone in which such building, structure, or land is located *and then only after* applying for and securing all permits and licenses required by all laws and ordinances." (Italics added.)

Here, prosecution witnesses testified that Onesra was operating an MMB, and defendants do not dispute that the operation of an MMB is not a permitted use under the city's zoning code. Contrary to defendants' claim, however, the People were not required to present evidence of "permits and licenses" as part of their case-in-chief. The permits and licenses referred to in LAMC section 12.21, subdivision A.1(a), are those that legally permitted

4

businesses must obtain in order to operate. (See Art. 2, Specific Planning—Zoning Comprehensive Zoning Plan, § 12.00 et seq.) They are not the ones required to qualify for limited immunity under LAMC section 45.19.6.3. Such proof must be made by a defendant as part of his affirmative defense. (See *People v. West Valley Caregivers, Inc.* (2015) 242 Cal.App.4th Supp. 24, 35-36.)

*Tyutina*

We also reject the claim that there was insufficient evidence to support the LAMC sections 45.19.6.2, subdivision A, and 12.21, subdivision A.1(a), charges against Tyutina. A corporate officer is subject to criminal prosecution whenever he or she knowingly participates in the corporation's illegal conduct. (*People v. Toomey* (1984) 157 Cal.App.3d 1, 15.) Although there was no testimony by the officers as to Tyutina's involvement in the MMB, the People submitted exhibits in support of their case-in-chief against her. None of these trial exhibits, however, were transmitted to this court (see Cal. Rules of Court, rule 8.870),[6] and we must presume they would have supported the court's order denying the section 1118 motion as to her. (See *People v. Leonard* (2014) 228 Cal.App.4th 465, 478 ["""order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown"""].)

*Immunity—LAMC Section 45.19.6.3, Subdivision E*

In regard to LAMC section 45.19.6.2, the trial court determined defendants did not qualify for immunity under LAMC section 45.19.6.3 because they failed to satisfy the registration requirement set forth in subdivision E—they were required to obtain a business tax registration for taxation as a medical marijuana collective in 2011 and 2012 and failed to do so. The court further found that the BTRC issued to Onesra in 2013 did not prove that the above requirement was satisfied. The court stated, "the law is clear; the statute is clear. A [BTRC] for a medical marijuana business had to be obtained in 2011 or 2012. And it wasn't done here.

---

[6]After oral argument, defendants filed a motion for relief from default on September 23, 2016, requesting that we permit late transmittal of the trial exhibits. (See Cal. Rules of Court, rule 8.870(b)(1).) The motion is denied for lack of good cause.

And on that basis alone, the court finds that beyond a reasonable doubt that Onesra is guilty of violating . . . section 45.19.6.2 . . . ."

"Limited immunity from prosecution under LAMC section 45.19.6.2, subdivision A, is unavailable as an affirmative defense where the MMB violates any of 15 restrictions set forth in LAMC section 45.19.6.3." (*People v. Trinity Holistic Caregivers, Inc.* (2015) 239 Cal.App.4th Supp. 9, 16 (*Trinity*).) LAMC section 45.19.6.3, subdivision E, provides: "Every [MMB] is prohibited that failed or fails to: (i) obtain a City business tax registration for taxation as a medical marijuana collective in 2011 or 2012, and (ii) renew that business tax registration within 90 days of the effective date of this Article and before each annual renewal deadline thereafter."

Defendants contend they should have been acquitted because they proved by a preponderance of the evidence that they qualified for the limited immunity in LAMC section 45.19.6.3. They maintain that at trial they presented a BTRC issued to "Onesra Enterprises Euphoric Caregivers Proposition 215," and that this registration was renewed by the payment of tax for each subsequent year, including 2011 and 2012.

We cannot adequately assess this claim because the trial exhibits were not transmitted to this court. In criminal appeals, "[e]xhibits admitted in evidence, refused, or lodged are deemed part of the record, but may be transmitted to the appellate division only as provided in [California Rules of Court, rule 8.870]." (Cal. Rules of Court, rule 8.870(a).) A party relying on trial exhibits must arrange to have them transmitted to the appellate court. (Cal. Rules of Court, rule 8.870(b) [request for transmittal of an exhibit must be made "[w]ithin 10 days after the last respondent's brief is filed or could be filed under rule 8.882, if the appellant wants the appellate division to consider any original exhibits that were admitted in evidence"].) As the appellants, defendants have the responsibility to put before this court every part of the record necessary to review claims asserted on appeal. (See, e.g., *People v. Whalen* (2013) 56 Cal.4th 1, 85 ["it is appellant's burden to present a record adequate for review and to affirmatively demonstrate error"].) "Where exhibits are missing we will not presume they would undermine the judgment. [Citation.]" (*Western Aggregates, Inc. v. County of Yuba* (2002) 101

6

Cal.App.4th 278, 291.)  Trial exhibits concerning the BTRC's filed in 2007 and 2013 are not before us.  We must therefore conclude, based on the silent record, that the court's finding that Onesra's registration for taxation as a medical marijuana collective occurred in 2013, and not in 2011 or 2012, was supported by the missing trial exhibits.[7]

*Ambiguity—LAMC section 45.19.6.3, subdivision E's disqualifying factor*

Defendants contend subdivision E is ambiguous because it does not explain how registration is accomplished.  They assert that because subdivision E does not explicitly require a business tax registration *certificate* to be issued in 2011 and 2012, their registration in 2007 and subsequent renewals satisfied subdivision E.[8]

"Issues of statutory construction are questions of law subject to independent review by the appellate court.  [Citation.]"  (*Smith v. Selma Community Hosp.* (2010) 188 Cal.App.4th 1,

---

[7]Notwithstanding the failure to timely transmit the trial exhibits, we nevertheless note the appellate record contains a BTRC issued to "Onesra Enterprises [¶] Euphoric Care Givers [¶] PROP 215" in 2007, which was attached to defendant's Request for Judicial Notice in Support of Invitation to Dismiss filed in the trial court.  Even assuming that this BTRC was the same one admitted at trial, defendants' claim that it proved the requisite registration fails.  On the certificate, under "description," it states "retail sales," and under "fund/class," it states "L044."  The court found a different BTRC was issued to Onesra in 2013, and that it evidenced registration in the proper category for taxation.  This exhibit (People's exhibit 9) was likewise not transmitted to us.  A BTRC issued on October 25, 2013, is attached as another exhibit to the aforementioned request for judicial notice.  On the certificate, under "description," it states "medical marijuana collectives," and under "fund/class," it states "L050."  Assuming this BTRC was the one admitted at trial, we conclude the court reasonably found it was evidence of registration for *taxation as a medical marijuana collective*, and that registration as such occurred in 2013.  (See *People v. Disa* (2016) 1 Cal.App.5th 654, 664.)

[8]Defendants argue that subdivision E's use of the present tense—"fails"—makes it uncertain when registration must occur and that because it refers to registration "in 2011 *or* 2012," it can be construed "to allow registration in either 2011 or 2012."  We do not see how such arguments advance defendants' position that they registered in 2007.

In any event, this is not what the statute plainly says.  In the case of "failed or fails," the disjunctive is used because there are two subsections concerning past *and* present actions of the defendant.  (See *People v. Vasquez* (2016) 247 Cal.App.4th 513, 519 [""When used in a statute, the word 'or' indicates an intention to designate separate, disjunctive categories""].)  It is evident that the past tense "failed"—and not the present tense "fails"—must be ascribed to a defendant's failure to obtain registration in 2011 and 2012, as such events would necessarily have occurred in the past.  As to the second "or" in "2011 or 2012," it is not referring to a defendant's registration of an MMB, but rather to the failure to obtain registration of the MMB.  Thus, the use of the disjunctive clearly expresses that the *failure* to obtain registration either in 2011 or 2012 will suffice to disqualify the defendant from immunity.

20.)  "When statutory language is clear and unambiguous—that is, has only one reasonable construction—courts usually adopt the literal meaning of that language.  [Citations.]  An exception to this general rule exists for situations where a literal construction would frustrate the purpose of the statute or produce absurd consequences.  [Citation.]"  (*Id*. at p. 21.)  "When statutory language is ambiguous, courts must ""'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'  [Citation.]"'  [Citation.]"  (*Ibid*.)

Subdivision E expressly provides that an MMB is prohibited if it "failed or fails to: (i) obtain a City business tax registration for taxation as a medical marijuana collective in 2011 or 2012, and (ii) renew that business tax registration . . . ."  Based on the plain reading of the statute, it is clear *when* registration under subdivision E must occur—in 2011 and 2012. Defendants' claim that the subdivision leaves ambiguous how to prove registration is belied by the fact that both they and the People submitted to the court BTRC's *as evidence* of registration for taxation as an MMB—a clear indication that no ambiguity exists.

*Rule of lenity*

Defendants advocate the application of the rule of lenity.  ""'"That rule generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation."""  (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1035.)  To justify invoking the rule, """"there must be an *egregious* ambiguity and uncertainty . . . ."'  [Citation.]"  [Citation.]'  [Citation.]"  (*Ibid*.)  As we have concluded there is no ambiguity, the rule does not apply.  (See *Trinity*, *supra*, 239 Cal.App.4th at p. Supp. 21.)

*Substantial compliance*

Defendants maintain that they substantially complied with subdivision E by registering in 2007 and by paying their taxes, including those due under the city's tax amnesty program. We must reject this claim as it relies on an erroneous reading of the statute and on the aforementioned missing trial exhibits.  Moreover, this court, in considering a different

registration requirement (LAMC § 45.19.6.3, subd. B) in *Trinity* previously held "[t]he substantial compliance doctrine has no application . . . ." (*Id.* at p. Supp. 19.) We reach the same conclusion here. "Even if a statute is considered mandatory, substantial compliance may suffice in some circumstances if the purpose of the statute is satisfied. [Citations.]" (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1420-1421.) However, in the context of the city's ban on MMB's and the stringent standard for immunity, we conclude substantial compliance would defeat the purpose of the statute, which is to stem the proliferation of MMB's and their deleterious effects in the city. (*Trinity*, *supra*, 239 Cal.App.4th at p. Supp. 21 ["the statute's stated intent was also to 'stem the negative impacts and secondary effects associated with the *ongoing* [MMB's] in the City'"].)

*Preemption*

Defendants contend the holding in *Kirby v. County of Fresno* (2015) 242 Cal.App.4th 940 (*Kirby*) applies to the instant case and we must reverse based on the state's preemption of medical marijuana laws. We disagree.

In *Kirby*, the plaintiff filed a declaratory relief action asserting that a county ban on possession and cultivation of marijuana was preempted by state law that permitted her to cultivate medical marijuana for personal use. (*Kirby*, *supra*, 242 Cal.App.4th at p. 947.) "The *Kirby* court concluded that a very narrow portion of the county ordinance at issue was preempted; specifically, the county's absolute ban on individual cultivation, punishable as a misdemeanor, was preempted by that portion of the [Medical Marijuana Program Act (MMPA)] which protects qualified patients with valid medical marijuana identification cards from arrest for possession or cultivation of medical marijuana. [Citations.] The MMPA's protection of those individuals against arrest prohibits prosecutions under local ordinances for the same conduct. [Citation.]" (*Safe Life*, *supra*, 243 Cal.App.4th at p. 1050, fn. 26.)

*Kirby* is distinguishable. The ordinance in that case was an absolute ban on marijuana cultivation and conflicted with the MMPA, which provided immunity from arrest and

9

prosecution for medical cultivation. Unlike the ordinance in *Kirby*, LAMC section 45.19.6.2 does not criminalize personal use or cultivation; it is a ban on MMB's.[9]

Moreover, the California Supreme Court has made clear that municipalities have the authority to prohibit the distribution of medical marijuana within their jurisdictions "by declaring such conduct on local land to be a nuisance, and by providing means for its abatement." (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 762, fn. omitted.) The MMPA specifically authorizes local regulation of the establishment, operation, and location of MMB's. (Health & Saf. Code, § 11362.83.) "The legislature amended [the MMPA], effective January 1, 2012, to read . . . : [¶] 'Nothing in this article shall prevent a city or other local governing body from adopting and enforcing any of the following: [¶] (a) Adopting local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective. [¶] (b) *The civil and criminal enforcement of local ordinances described in subdivision (a). . . .*' [Citations.]" (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1545-1546, original italics.) Indeed, *Kirby* itself acknowledged "local governments may regulate or ban the cultivation of medical marijuana because land use regulations are not preempted by the . . . MMP[A]." (*Kirby*, *supra*, 242 Cal.App.4th at p. 970.)

*Tax Amnesty*

Defendants contend the instant prosecution was also barred by the city's tax amnesty program. (LAMC, § 21.12.1 et seq.) Defendants maintain that Onesra qualified for amnesty and timely paid its taxes under the program and therefore "no criminal prosecution can be filed on account of alleged non-payment, late payment, or incomplete payment of taxes." The claim is without merit. Tax amnesty bars prosecution for underreporting, nonreporting, or nonpayment of taxes. (See *River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922, 950-951.) The instant criminal prosecution, however, was not the result of

---

[9]*Safe Life* disagreed with the appellants' contention that "Prop D is preempted under *Kirby*." (*Safe Life*, *supra*, 243 Cal.App.4th at p. 1050, fn. 26.) It stated that "*Kirby* confirmed . . . that local ordinances could still prohibit this conduct as a matter of land use. [Citation.]" (*Ibid.*)

defendants' tax liability, but rather the illegal operation of an MMB without qualifying for immunity.

*Zoning Violation*

Defendants argue the court erroneously "heard the case as . . . a nuisance violation when it is in fact a zoning violation" and improperly excluded evidence in support of their affirmative defense based on preexisting nonconforming use. We deem the contention forfeited based on the lack of meaningful legal analysis. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Defendant has also failed to demonstrate prejudice. (*People v. Fields* (2009) 175 Cal.App.4th 1001, 1018 ["'It is . . . well settled that the erroneous . . . exclusion of evidence does not require reversal except where the error . . . caused a miscarriage of justice'"].) "A legal nonconforming use is one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when it continues thereafter. [Citations.]" (*Hansen Brothers Enterprises, Inc. v. Bd. of Supervisors* (1996) 12 Cal.4th 533, 540, fn. 1.) Here, defendants have failed to establish that they were entitled to assert this affirmative defense—that the operation of their MMB was a permitted use under the premoratorium LAMC's commercial use classifications. (See *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1091; *Conejo Wellness Center, Inc. v. City of Agoura Hills*, *supra*, 214 Cal.App.4th at pp. 1543-1544.)[10]

*Structural Error*

---

[10]Defendants in their opening brief allude to due process and notice arguments "as . . . explained in some detail in their trial brief." We do not consider arguments incorporated by reference. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; Cal. Rules of Court, rule 8.883(a)(1)(A).) We note, however, that at trial, defendants argued that Proposition D was subject to minimal procedural requirements pursuant to Government Code section 65804. This court in *People v. Optimal Global Healing, Inc.* (2015) 241 Cal.App.4th Supp. 1, 9 held that "because Proposition D was enacted by voters rather than the City Council, [Government Code section] 65804 . . . did not apply . . . ."

In their reply brief, defendants complain that "[t]he prosecution failed to introduce any evidence of reasonable written notice, and refusal of [*sic*] failure to cure a public nuisance condition," as required by Penal Code section 373a. This argument seems counter to defendants' initial argument, that the case should not have been prosecuted as a nuisance violation. In any event, because the Penal Code section 373a claim is raised for the first time in the reply brief, it is waived. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)

11

Finally, defendants' claim that "the court committed structural error when it limited closing argument" to 20 minutes and "two issues" is undeveloped and unsupported by analysis or citation to legal authority, and is thus forfeited.  (*People v. Clayburg*, *supra*, 211 Cal.App.4th at p. 93.)  The claim is also forfeited because it was not raised in the trial court.  (*Ibid*.)

## DISPOSITION

The judgment of conviction is affirmed.

_____
B. Johnson, J.

We concur:

_____
P. McKay, P. J.

_____
Ricciardulli, J.